**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (pro hac vice pending)
Laurence M. Rosen, Esq. (pro hac vice pending)
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: philkim@rosenlegal.com

Patrick R. Leverty, Esq., NV Bar No. 8840
LEVERTY & ASSOCIATES LAW CHTD.
608 Lander Street
Reno, NV 89509
Tel.: (775) 322-6636
Fax: (775) 322-3953
Email: pat@levertylaw.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| LUIZ GONZALEZ DIEZ, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RICHTECH ROBOTICS INC., WAYNE HUANG, and MICHAEL HUANG,<br><br>Defendants. | No. 2:26-cv-00231<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Plaintiff Luiz Gonzalez Diez ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Richtech Robotics Inc. ("Richtech" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.[1]

**NATURE OF THE ACTION**

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Richtech securities between January 27, 2026 and 12:00 PM EST on January 29, 2026, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

---

[1] Unless otherwise stated, all emphasis is added and internal citations and hyperlinks are omitted.

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Richtech securities during the Class Period and was economically damaged thereby.

7.  Defendant Richtech describes itself as a "robotics and artificial intelligence ("AI") technology company focused on developing advanced embodied AI systems that aims to improve the efficiency and productivity of U.S. businesses."

8.  Richtech is incorporated in Nevada and its principal executive offices are located at 2975 Lincoln Road, Las Vegas, Nevada 89115.

9.  The Company's Class B common stock trades on the NASDAQ exchange under the ticker symbol "RR."

10. Defendant Wayne Huang is Richtech's founder and served as Chief Executive Officer ("CEO") throughout the Class Period.

11. Defendant Michael Huang was Chief Financial Officer ("CFO") at all relevant times, and is also a founder.

12. Defendants Wayne and Michael Huang are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

(a)  directly participated in the management of the Company;

(b)  was directly involved in the day-to-day operations of the Company at the highest levels;

(c)  was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

14. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Richtech under *respondeat superior* and agency principles.

16. Defendant Richtech and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

17. On January 27, 2026, at 08:00 ET, Richtech issued a press release entitled "Richtech Robotics Collaborates with Microsoft to Advance Agentic AI in Real-World Robotics Applications" (the "Press Release").

18. The Press Release contained the subheading "*[j]oint engineering effort with Microsoft AI Co-Innovation Labs enhances Richtech's ADAM robot and extends intelligent automation across physical environments*" (italicization in original).

19. The headings in ¶¶ 17-18 were materially false and misleading at the time they were made because there was no commercial collaboration or joint engineering effort between Richtech and Microsoft.

20. The Press release further stated the following:

3

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

> [Richtech] *today announced a hands-on collaboration with Microsoft through the Microsoft AI Co-Innovation Labs to jointly develop and deploy agentic artificial intelligence capabilities* in real-world robotic systems.
>
> *Through close collaboration between Richtech Robotics' engineering team and Microsoft's AI Co-Innovation Labs*, the companies worked together to enhance Richtech Robotics' ADAM robot with adaptive intelligence powered by Azure AI. *The collaboration focused on applying vision, voice, and autonomous reasoning to physical environments, enabling robots to move beyond task execution and support more contextual, conversational, and operationally aware interactions*.
>
> *Richtech Robotics and Microsoft* enhanced ADAM with additional layers of context awareness, allowing the robot to incorporate signals such as time of day, weather, and promotions, respond more naturally to customer preferences, and apply vision-based models to maintain speed and quality during peak demand. These capabilities also support operational awareness, including notifying staff of ingredient or equipment issues before disruptions occur. These capabilities are designed to support smoother workflows and more responsive customer interactions in retail environments.
>
> *While ADAM serves as a flagship example, the collaboration demonstrates how agentic AI capabilities* can be applied across a range of physical environments, including logistics, hospitality, manufacturing, and other operational settings where real-time perception, reasoning, and reliability are essential. By combining physical robotics with cloud-based AI models, Richtech Robotics can apply software-driven intelligence across its portfolio to improve operational visibility, service quality, and performance without requiring extensive new hardware investments.
>
> *        *        *
>
> The collaboration underscores Richtech Robotics' continued investment in data-driven automation and physical AI, leveraging cloud intelligence, perception, and autonomous reasoning to improve performance across commercial and industrial applications.

21.     The statements in ¶ 20 were materially false and misleading at the time they were made because Richtech did not collaborate on a commercial matter with Microsoft.

22.     The Press Release quoted Defendant Wayne Huang as saying that "[o]ur *collaboration with Microsoft reflects a shared focus* on applying advanced AI to practical, real-world use cases[.] *By working closely with the Microsoft AI Co-Innovation Labs, our teams were able to jointly develop and deploy intelligent capabilities that* strengthen reliability, enhance customer interactions, and support scalable automation across physical environments."

23. The statement in ¶ 22 was materially false and misleading at the time it was made because Richtech did not collaborate on a commercial matter with Microsoft.

24. On the material news discussed above, Richtech Class B common stock appreciated from a closing price of $3.81 on January 26, 2026, to a closing price of $5.51 on January 27, 2026, a 44.6% increase in share price. Upon information and belief, Richtech fraudulently claimed that it had a collaborative relationship with Microsoft, when in fact it had none, in order to raise the price of its stock for a private placement.

25. Just hours later, on January 28, 2026 at 08:00 AM EST, Richtech issued a press release entitled "Richtech Robotics Announces $38.7 Million Private Placement Priced At-The-Market Under Nasdaq Rules." (the "Private Placement Announcement").

26. The Private Placement Announcement stated that Richtech had "entered into a definitive agreement with a fundamentally driven institutional investor for the purchase and sale of 8,500,000 shares of the Company's Class B common stock *in a private placement priced at the market under Nasdaq rules*." Further, the "*private placement is expected to close on or about January 29, 2026*, subject to the satisfaction of customary closing conditions."

27. The statements contained in ¶¶ 17, 18, 20, 22 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Richtech claimed that it had a collaborative and commercial relationship with Microsoft when it did not; and (2) as a result, Defendants' statements about Richtech's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all times.

### THE TRUTH BEGINS TO EMERGE

28. On January 29, 2026, at 12:00 PM EST, Hunterbrook Media ("Hunterbrook") published an article entitled "Breaking: Microsoft Denies Partnership with Richtech Robotics" (the "Hunterbrook Article") (formatting altered from original).

29. The Hunterbrook Article stated initially that after "Richtech [. .] stock added more than $370 million in market cap on the announcement of a "collaboration" Tuesday, the company announced a dilutive fundraise the next morning. ***Microsoft tells [Hunterbrook] the engagement was a "standard" customer program*** with "***no commercial element***."" Further, "[t]his comes after Richtech missed its 10-K deadline, hampering its ability to raise money through at-the-market offerings."

30. The Hunterbrook Article further stated:

Shares Richtech Robotics ($RR) surged more than 40% on Tuesday after the company announced a "collaboration" with Microsoft through the tech giant's AI Co-Innovation Labs. On the back of that pump, the following morning, Richtech announced a $38 million dilutive fundraise.

***But Microsoft tells Hunterbrook Media that Richtech is just a customer.***

31. The Hunterbrook Article quoted a Microsoft representative as saying the following:

Richtech participated in an AI Co-Innovation Lab engagement, which is a standard customer engagement focused on exploring and prototyping AI solutions using Microsoft technologies[.] ***There is no commercial element in this lab engagement***.

32. The Hunterbrook Article further stated:

***Specifically, Richtech appears to have participated in a program Microsoft describes on its website as being available to "any customers/partners looking to implement Microsoft's AI tools***," including "startups." (You can apply right here — and who knows, maybe you, too, can add $370 million in market cap to your name! Expect a response in "3-5 business days.")

\*   \*   \*

This strikes a very different tone from Richtech's press release, which cited a "close collaboration" between Richtech and Microsoft.

33. The Hunterbrook Article further stated the following:

***The market, at least, seemed to think this implied a meaningful relationship between the two companies — the day of the announcement, $RR saw its steepest daily percentage increase in market cap in over a year***. But based on Microsoft's statement to Hunterbrook, ***no material partnership appears to exist***.

***And to the extent Richtech actually achieved anything with this press release, its signature accomplishment appears to have been convincing the market that an***

*ordinary, complimentary customer training session amounted to some kind of partnership*. (Sherwood News, owned by Robinhood: "Richtech Robotics soars after announcing partnership with Microsoft." Benzinga: "Richtech Robotics Stock Surges On Microsoft AI Partnership." And so on.)

*In reality, Microsoft's AI Co-Innovation Labs are described on the company's website as offering "one-week long complimentary, personalized development sprints for engineering teams". In other words, the "collaboration" Richtech announced appears to be participation in a free prototyping program available to Microsoft customers — not a commercial partnership.*

34. The Hunterbrook Article stated the following about Richtech's failure to file SEC documents on time, which relate to its need to use private placements to attract capital:

> The Microsoft announcement came just one week after Richtech finally filed its delayed 10-K with the SEC on January 20, 2026, even missing its extended deadline.
>
> Richtech's fiscal year ended September 30, 2025. As a smaller reporting company, it had until December 29 to file its annual report. Instead, the company filed an NT 10-K (notification of late filing), claiming "additional time is needed to finalize the financial statements." That extension seemingly granted Richtech until January 13 to file. The deadline came and went with no filing.
>
> Failing to file timely reports, as required by Nasdaq Listing Rule 5250(c)(1), triggers an automatic deficiency notice. Once Nasdaq's Listings Qualifications Department issues that notice — which may already have happened behind closed doors — Richtech has just four business days to publicly disclose its deficiency notice via an 8-K filing.
>
> A review of Richtech's SEC filings shows no such 8-K was filed between the January 13 deadline and the January 20 10-K filing. ***Did Richtech receive a deficiency notice and fail to disclose it? Richtech did not answer this question in its reply to Hunterbrook's request for comment.***

35. The Hunterbrook Article stated the following about Richtech's private placement, referencing prior fraud allegations and discussing how the private placement announcement may have been timed to benefit institutional investors at the expense of retail:

> Even without the fraud allegations, Richtech's numbers are bleak.
> The 10-K filing included Richtech's financial figures, which reveal a cash-burning machine. Fiscal year 2025 revenue totaled $5.045 million, with a net loss of $15.754 million — nearly double the prior year's $8.14 million loss. After the Microsoft announcement, the company now has a market capitalization of more than $1 billion.
>
> Without substantial revenue, to fund its operations, Richtech has repeatedly diluted shareholders by raising money through the issuance of new shares. But missing its 10-K filing deadline limited its options to secure more cash.

To use the Form S-3 process — the streamlined registration that enables fundraising approaches like shelf offerings and ATM programs — companies must have filed all required SEC reports on time for the preceding 12 months. SEC Rule 12b-25 allows a 15-day grace period for late filers, during which the filing is "deemed" timely. Richtech missed that deadline. The 10-K officially became delinquent, and barring some departure from standard policy, the company should have lost S-3 eligibility.

*That means Richtech cannot tap its shelf registration or ATM program until it has 12 consecutive months of timely filings — so the earliest it could regain eligibility is January 2027. For a company burning over $20 million a year on $5 million in revenue, losing easy access to capital markets may be an existential problem*.

*So Richtech found another way to raise money*.

*On Wednesday morning — one day after the Microsoft announcement sent shares soaring — Richtech announced a $38.7 million private placement, selling millions of shares to an institutional investor "priced at the market under Nasdaq rules."* Unlike ATM offerings, private placements under Regulation D don't require S-3 eligibility.

*The timing could be problematic. Under Nasdaq rules, the "Minimum Price" for a private placement is the lower of the closing price or trailing five-day average immediately preceding the signing of the binding agreement*. We don't yet know when the agreement was signed — that will be disclosed in the 8-K filing.

*If the deal was signed after Monday's 44% surge, part of the pump would be baked into the Minimum Price calculation, allowing the company to raise capital at a higher price than would have been possible days earlier*, while the investor would still be able to buy Richtech stock meaningfully below market price.

*But if the deal was signed before the Microsoft announcement, it's even more striking: The institutional investor locked in shares at a price based on the pre-pump stock, and then the very next day, a "collaboration" announcement sent the stock soaring — meaning the institution is now sitting on immediate paper gains while retail investors bought in at the top*.

*The playbook, in other words, seems to be: Miss your 10-K deadline, limiting your ability to fundraise; announce a "close collaboration" that in reality appears to be a one-week program open to just about anybody; watch the stock surge 44%; then disclose a private placement the next morning*, allowing institutional investors to buy shares at a cheaper price than retail.

We may never know what Richtech learned about software engineering at the Microsoft Innovation Lab. But what seems clear is these guys could teach a course of their own on financial engineering.

36. On this news Richtech Class B common stock fell $1.06 per share, or 20.87%, to close at $4.02 on January 29, 2026. The following day, Richtech Class B common stock fell a further $0.44 per share, or 10.9%, to close at $3.58 on January 30, 2026.

37. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

40. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- as a public issuer, the Company filed periodic public reports;
- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;
- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and
- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

45. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to

disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

51. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

52. Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

53. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

54. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

55. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

56. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II

**Violations of Section 20(a) of the Exchange Act**

**Against the Individual Defendants**

57. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's business practices.

59. As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

60. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

61. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c) awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 2, 2026                Respectfully submitted,

**LEVERTY & ASSOCIATES LAW CHTD.**

_____
Patrick R. Leverty, Esq., NV Bar No. 8840
608 Lander Street
Reno, NV 89509
Tel.: (775) 322-6636
Fax: (775) 322-3953
Email: pat@levertylaw.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (pro hac vice pending)
Laurence M. Rosen, Esq. (pro hac vice pending)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Richtech Robotics Inc. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis not to exceed one-third of the recovery and will advance all costs and expenses. All payments of fees and expenses shall be made only after Court review and approval. The Richtech Robotics Inc. Retention Agreement provided to the Plaintiff is incorporated by reference herein and is effective, upon execution and delivery by The Rosen Law Firm P.A.

**First Name:** Luis
**Middle Initial:**
**Last Name:** Gonzalez Diez
**Mailing Address:**
**City:** Redacted.
**State:**
**Zip Code:**
**Country:**
**Phone:**
**Email Address:**



Plaintiff certifies that:

1. Plaintiff has reviewed a complaint and authorized its filing or the filing of an amended complaint.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

**Purchases:**

| Type of Security | Buy Date | no of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 01/29/2026 | 20000 | $4.42 |

| Type of Security | Buy Date | no of Shares | Price per Share |
|---|---|---|---|
| Common Stock | | | |

**Sales:**

| Type of Security | Sale Date | no of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 01/29/2026 | 20000 | $3.93 |

**I have not sought to serve as a representative party on behalf of a class under the federal securities laws during the last three years, except if set forth below.**
Not applicable

I declare and certify under penalty of perjury, under the laws of the United States of America, that the foregoing information is true and correct. **YES**

By Signing below and submitting this certification form electronically, I intend to sign and execute this certification pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act and retain the Rosen Law Firm, P.A. to proceed on Plaintiff's behalf, on a contingent fee basis. **YES**

Date of signing: 01/30/2026 11:47:18 at Eastern Standard Time, USA



___